IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER P. RADDANT, and GROUP HEALTH
COOPERATIVE OF EAU CLAIRE,

                Plaintiffs,

STATE OF WISCONSIN DEPARTMENT OF HEALTH
SERVICES,

                Involuntary plaintiff,

    v.

DOUGLAS COUNTY, BRETT A. LARSON, ALAN G.
CLARKE, THOMAS M. JOHNSON, DAVID L.
PHILLIPS II, and RANDI M. LIBBY (A.K.A. RANDI
M. BURNAP),

                Defendants.[1]

OPINION and ORDER

22-cv-555-jdp

---

Plaintiff Christopher P. Raddant was arrested for bail jumping in October 2019. He contends that several correctional officers at the Douglas County jail used excessive force on him while they were conducting a pat-down search, ending with Raddant falling on his face. Defendants move for summary judgment on all claims and on Raddant's request for punitive damages. Dkt. 48.

---

[1] Plaintiffs' amended complaint names State of Wisconsin Department of Health Services as an "involuntary plaintiff." The court previously dismissed the department from the original complaint because the Federal Rules of Civil Procedure do not recognize "involuntary plaintiffs," and the department had not filed an answer or asserted its own claim in the case. Dkt. 31. No party sought reconsideration of that that decision, Raddant did not seek leave to add the department to the amended complaint, and the department has not participated in the case since the amended complaint was filed. So the court will again dismiss the department as improperly joined.

Raddant says that officers used excessive force on him in multiple ways. There are genuine disputes of material fact on whether officers Brett Larson and Randi Libby refused to adjust Raddant's handcuffs without justification and painfully twisted his left arm, despite Raddant telling them that he had a MRSA infection on his left wrist. So the court will deny defendants' summary judgment on those two claims.

Raddant also says that officers used excessive force on him by intentionally causing him to fall when they lifted up one of his legs. But Raddant was resisting officers and failing to comply with orders to kneel at the time. Officers were holding onto Raddant on both sides, and they attempted to cushion his fall by placing a mattress pad down. Raddant's allegation that one of the officers removed the pad at the last second is not supported by any admissible evidence. Under those circumstances, defendants are entitled to summary judgment on this claim because there is no clearly established law holding that defendants' conduct violated the Fourth Amendment.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

On October 19, 2019, Griffith Coffman, an officer for the Superior Police Department, arrested Raddant for drinking alcohol in violation his bail conditions. Raddant says he was sick with a fever, not drunk.

Coffman brought Raddant to the Douglas County Jail. Coffman's body camera was recording, and the camera recorded both video and audio, so some of the facts below are based on the video. The portion of the video relevant to Raddant's claims starts after the 37-minute mark. Dkt. 57-1.

Raddant entered the jail with his hands cuffed behind his back. Defendant Brett Larson, a correctional officer for the jail, led Raddant to a counter. Larson told Raddant that he was going to conduct a pat-down search. It is standard practice at the jail to search for contraband when an arrestee arrives in handcuffs. Coffman told Larson, "He has active MRSA, he says, on his wrist." Raddant told Larson that his left wrist was infected. Defendant Randi Libby, also a correctional officer, was standing at the counter a few feet away from Raddant, filling out paperwork.

As Larson began conducting the pat-down search, Raddant accused Coffman of ripping a bandage off his wrist. This started an argument between Raddant and Coffman, who was still in the booking area filling out paperwork. Coffman denied that he had removed Raddant's bandage.

As the search proceeded, Coffman moved away from the others for a couple minutes to wash his hands. He was still in the same room, but he was far enough away that the conversation between Raddant and the correctional officers is not clearly audible. Around the 41-minute mark of the video, Libby can be heard speaking. A few seconds later, Raddant raised his voice and used the word "fucking." Raddant says that he was asking for medical attention, but he doesn't say why. At this point, Coffman walked back to the counter where the pat-down search was occurring. Libby instructed Raddant, "Pay attention, look forward, and listen to [Larson]."

Libby walked over to Raddant. She held his right arm while Larson continued the search.

For the next few minutes, Raddant and the officers argued. Raddant repeatedly accused Larson of twisting his arm, Raddant said that the officers were hurting his wrist and that he

3

was trying to comply. He told the officers to stop, and he asked them to loosen or remove the handcuffs. Larson denied that he was twisting Raddant's arm, and Libby and Larson stated that Raddant was "tensing up." Raddant said that he was "not doing a god damn thing," and he told the officers that he would "do whatever [they] want." Raddant and the officers traded threats, with Larson stating that Raddant would "go to the floor" if he kept "tensing up," and he would "not go down gently." Raddant said that "we're going to have issues" if Larson continued twisting his arm. The camera faced Raddant with Libby and Larson behind him and a counter in between the camera and the parties, so the video does not show exactly how the officers were holding Raddant or what Raddant was doing with his arms or hands.

Defendant Thomas Johnson, another correctional officer, arrived on the scene. He had been summoned over the radio to assist with "an uncooperative arrestee." Dkt. 73, ¶ 44. Johnson stood by, but he did not place his hands on Raddant at that time.

When Larson began pulling on Raddant's arm, Raddant said, "Hey wait, stop." Libby told Raddant that he was "tensing up and we're going back." She did not explain what that meant. When Raddant again said, "stop," Libby yelled, "No, don't tell me to stop. You're going to stop. We're going back to a cell, that's the end of it. Go."

The officers behind Raddant, including Larson and Johnson, pulled Raddant backwards and away from the counter, turned him around, and pushed him down the hallway from behind. Another officer, defendant David Phillips, joined the group, holding on to Raddant's right arm.

Libby followed, as did defendant Alan Clarke, another correctional officer who had just arrived, but neither officer had their hands on Raddant. Coffman did not follow, so Raddant and the correctional officers disappeared from view as they walked down the hallway.

4

Raddant says in his deposition that officers "dragged" him "by [his] wrists" to the receiving cell. Dkt. 70, at 80:17–83:12. Defendants say that Raddant was "pushing his weight against officers and flexing and locking his legs to prevent the officers from walking into the cell." Dkt. 73, ¶ 60.

The events in the receiving cell were captured by a camera mounted on the ceiling, but there is no audio. Dkt. 51-1. Johnson and Larson pushed Raddant into the cell. Johnson was holding Raddant's right arm, and Larson was holding Raddant's left arm. Raddant resisted the officers by pushing his weight against them and flexing and locking his legs. Johnson and Larson maneuvered Raddant toward a cement bunk that served as a bed. Johnson lowered a plastic-covered mattress pad onto the bunk. Officers ordered Raddant to kneel on the pad.

While still being held by Johnson and Larson, Raddant placed his left leg on top of the mattress pad, and his leg slid forward on the pad. Raddant's right knee rested on the edge of the bunk. As Raddant began to stand up on both legs, Clarke grabbed hold of Raddant's right ankle and pulled it up and back to destabilize Raddant. Johnson and Larson were still holding on to Raddant's left and right arm. As Raddant's upper body moved forward, his left leg quickly slid back on the mattress pad, causing the pad to slide backward too. Raddant fell forward. At that point, neither Johnson nor Larson had a strong hold on Raddant, so Raddant's fall was largely uncontrolled. He fell face first onto the cement bunk.

The video—which lasts only 17 seconds—ends there. Raddant says that he lost consciousness for several minutes. Defendants say that Raddant continued to yell and swear.

After staff saw that Raddant's head was bleeding, they called an ambulance, and Raddant was taken to the hospital.

5

Raddant says that he was treated for a tear in the labrum of his left shoulder, a mild traumatic brain injury, and a nerve injury in his left wrist because of defendants' conduct. He also says that he continues to suffer from chronic pain, weakness, and numbness in his left hand.

ANALYSIS

**A. Overview of the claims and legal standards**

Raddant does not precisely identify the scope of his claims in his complaint or his brief. But the court understands Raddant to be challenging five alleged actions by one or more of the individual defendants: (1) refusing to loosen or remove his handcuffs; (2) twisting his left arm; (3) "dragging" him by his wrists while taking him to the receiving cell; and (4) lifting his right ankle, causing him to fall in the receiving cell; and (5) kicking the mattress out from underneath him, so his head hit the concrete.

Raddant also says in his brief and proposed findings of fact that he requested medical care, but defendants refused to provide it. Raddant did not raise that claim in his complaint, and he does not develop an argument in support of such a claim, so the court will not allow Raddant to assert a claim for a failure to provide medical care.

In his complaint, Raddant asserted state-law claims for negligence and battery and a municipal liability claim against Douglas County. But Raddant does not oppose defendants' motion for summary judgment on those claims. In fact, Raddant moves to voluntarily dismiss those claims in his opposition brief. Dkt. 65, at 2. So the court will dismiss those claims with prejudice.

All of Raddant's remaining claims are that individual defendants used unconstitutionally excessive force. Raddant was an arrestee, so those claims are governed by the Fourth Amendment. In his brief, Raddant suggests that the Fourteenth Amendment may apply because he was "a pretrial detainee." Dkt. 65, at 5. But the Fourth Amendment applies until the arrestee receives a probable cause hearing, *Jump v. Village of Shorewood*, 42 F.4th 782, 792 (7th Cir. 2022), and Raddant had not received such a hearing before the events relevant to this case. In any event, the Fourth Amendment and Fourteenth Amendment standard for excessive force is the same. *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 467 n.2 (2021).

The basic question for an excessive force claim under the Fourth Amendment is whether the officer used "greater force than was reasonably necessary." *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016). This determination is made from the perspective of a reasonable officer in light of the totality of the circumstances known to the officer, without regard to the officer's intent or his subjective beliefs. *Williams v. Indiana State Police Dept.*, 797 F.3d 468, 472–73 (7th Cir. 2015); *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). In assessing reasonableness, relevant factors include the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to temper or to limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Lombardo*, 594 U.S. at 466–67.

When the defendant is raising a qualified immunity defense, as defendants in this case are, the plaintiff must show that the defendants violated clearly established law, which means that the law was sufficiently clear at the time of the alleged violation that every reasonable official would understand that what he is doing is unconstitutional. *Tousis v. Billiot*, 84 F.4th

7

692, 698 (7th Cir. 2023). The plaintiff can do this in one of three ways: (1) point to a closely analogous, binding case that established a right to be free from the type of force the officers used; (2) identify a clear trend in the case law showing that the recognition of the right by controlling precedent is merely a question of time; or (3) show that the force was so plainly excessive that, as an objective matter, the officers would have been on notice that they were violating the Fourth Amendment, even without case law involving similar facts. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620–21 (7th Cir. 2022); *Chelios v. Heavener*, 520 F.3d 678, 691–92 (7th Cir. 2008).

Defendants move for summary judgment on all of Raddant's claims, as well as Raddant's request for punitive damages. The question on summary judgment is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

The court will consider whether there are any genuine issues of material fact for each of the five uses of force at issue. The court will organize Raddant's claims into three groups: (1) forced used in the booking area (handcuffs and arm twisting); (2) force used when moving Raddant from the booking area to the receiving cell ("dragging" him by his wrists); and (3) force used in the receiving cell (lifting up Raddant's leg and removing the mattress pad).

8

### B. Force used in the booking area

#### 1. Handcuffs

Raddant contends that defendants used excessive force by refusing to either remove or loosen his handcuffs. Raddant says that the handcuffs were so tight that he "couldn't feel [his] fingers." Dkt. 70 (Raddant Dep. 69:14–20).

The law governing the use of handcuffs is clear: "[A]n officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Rooni v. Biser,* 742 F.3d 737, 742 43 (7th Cir. 2014) (internal quotation marks omitted). In assessing reasonableness, relevant circumstances include an officer's knowledge of a preexisting injury or medical condition that would have been aggravated by handcuffing and any complaints by the suspect about his pain. *Rabin v. Flynn*, 725 F.3d 628, 635 (7th Cir. 2013).

In this case, Raddant and Coffman told Larson and Libby that Raddant had a MRSA infection on his left wrist. Raddant also asked Larson and Libby at least four times to loosen or remove the handcuffs, and he repeatedly told them that he was in pain. Defendants identify no steps they took to address or evaluate Raddant's complaints.

Defendants say that it was reasonable for Raddant to be handcuffed during the pat-down search "to provide a greater level of safety and security" to the officers while they search for contraband, including weapons. Dkt. 49, at 14. And they say it was reasonable to leave the handcuffs on throughout the search because of Raddant's "noncompliant and resistive behavior." *Id.* In his opposition brief, Raddant does not cite case law holding that it is unreasonable to keep an arrestee in handcuffs during a pat-down search, and he does not

9

otherwise explain why it would be unreasonable. So the court will grant defendants' summary judgment motion on the issue whether defendants should have *removed* the handcuffs.

But Raddant's claim regarding the handcuffs goes beyond a contention that they should have been removed. Raddant's claim is that defendants should have done *something* to alleviate his pain from the handcuffs, such as loosening or adjusting them. Defendants simply ignore that aspect of the claim, and they identify no reason why they could not pause to evaluate whether Raddant's handcuffs were too tight or were aggravating his wrist infection. *See Ajala v. Tom,* 658 Fed. Appx. 805, 806–07 (7th Cir. 2016) (reversing summary judgment for defendants on excessive force claim in part because the "[d]efendants have never even alleged a penological justification for refusing to loosen [the plaintiff's] handcuffs").

Raddant alleges that the handcuffs were painful, and they were so tight that he could not feel his fingers. He told the officers that he had a wrist infection, and he complained about his pain numerous times. Defendants say that Raddant was not being cooperative, but they do not say that it would have been unsafe to adjust his handcuffs. Viewing the evidence in the light most favorable to Raddant, a reasonable jury could find that Libby and Larson violated Raddant's clearly established rights under the Fourth Amendment. So the court will deny summary judgment to Libby and Larson on this claim.

Raddant does not expressly limit this claim to Libby and Larson. In fact, Raddant does not expressly limit any of his claims to specific defendants. But Libby and Larson were the only defendants conducting the pat-down search. A defendant may be held liable for failing to stop another officer's use of excessive force if the defendant had reason to know that the other officer was violating the plaintiff's constitutional rights, and the defendant had a "realistic opportunity" to prevent the violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).

Raddant does not explain how the other defendants meet that standard. They did not know about Raddant's wrist infection, they were not on the scene when Raddant started complaining about the handcuffs, and Raddant cites no evidence that they were in a position to see how tight the handcuffs were. At the least, the other officers are entitled to qualified immunity because Raddant does not point to case law clearly establishing their liability. So the court will dismiss this claim against Johnson, Phillips, and Clarke.

### 2. Arm twisting

Raddant alleges that Larson repeatedly twisted his arm during the pat-down search. The video shows that Raddant complained about this several times and that he told Larson and Libby that it was causing him pain. Larson and Libby deny that Larson was twisting Raddant's arm, but the court cannot make a credibility determination on a motion for summary judgment. *See Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir 2003). The court may disregard testimony based on video evidence, but only when "the video utterly discredits the non-movant's version of the facts such that there could be no reasonable disagreement about what the video depicts." *Esco v. City of Chicago*, 107 F.4th 673, 679–80 (7th Cir. 2024).

In this case, the video evidence does nothing to support Raddant's testimony, but it does not utterly discredit his testimony either. The camera is pointed at Raddant from the other side of a counter. Larson is standing behind Raddant, and Larson's hands and movements are not always in view. And Larson is holding Raddant's arm throughout. So the court cannot decide as a matter of law whether Larson was twisting his arm as Raddant says he was.

Defendants do not identify any security reason for twisting Raddant's arm during the pat-down search. "On-the-spot punishment, not reasonably adapted to obtain or keep control,

11

violates the Fourth Amendment." *Johnson v. Rogers*, 944 F.3d 966, 970 (7th Cir. 2019). If the jury finds Raddant credible, it could also find that Larson's conduct was gratuitous punishment.

Defendants say that Larson's force during the pat-down search was de minimis, so it could not violate the Fourth Amendment. But this argument rests on the assumption that Larson did not twist Raddant's arm, and the court cannot make that determination as a matter of law. Painfully twisting a suspect's arm is not a de minimis use of force. *See Payne*, 337 F.3d at 779; *see also Johnson*, 944 F.3d at 970 (gratuitous kick violates the Fourth Amendment). So viewing the facts in Raddant's favor, a reasonable jury could find that Larson violated Raddant's clearly established rights.

The remaining question is whether any of the other defendants may be held liable on this claim. Again, a defendant may be held liable for failing to intervene when that defendant had reason to know that another officer was violating the plaintiff's constitutional rights, and the defendant had a realistic opportunity to prevent the violation. *Harper*, 400 F.3d at 1064. In this case, Libby was standing next Larson, so she would have been in a position to see whether he was twisting his arm, and she could have told him to stop. *See Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) ("A realistic opportunity means a chance to warn the officer using excessive force to stop.") (internal quotation marks omitted). So the court will deny summary judgment to Libby on this claim as well.

The court will grant summary judgment on this claim to the remaining defendants, who were not present during most of the relevant time period. Raddant does not explain how they would have seen that Larson was using excessive force or how they could have intervened to stop Larson.

12

**C. Force used while moving Raddant to receiving cell**

Raddant contends that officers used excessive force while moving him from the booking area to the receiving cell. This claim fails for multiple reasons.

First, the video contradicts Raddant's proposed findings of fact on this claim. Raddant cites the video itself for the proposed fact that "jail staff pulled Raddant backward by the handcuffs." Dkt. 72, ¶ 13 (citing Dkt. 51-1, at 44:45–51). But the video does not show that. The viewer cannot see Raddant's hands or the handcuffs when officers are pulling Raddant backward and turning him around. But it appears from the video that officers are pulling Raddant back by his shoulders. Raddant neither complained about pain nor winced during the couple seconds that officers were turning him around.

Raddant cites his own testimony for the proposed fact that "[t]he officers dragged [Raddant] down the hallway rather than letting him walk himself." *Id.* ¶ 14 (citing Raddant Dep. 81:6–82:5). But the video shows that Raddant was not being dragged anywhere. Raddant walked himself down the corridor, and officers were walking *behind* him, pushing on his back to move him forward. Dkt. 51-1, at 44:45–51. The video of Raddant entering the receiving cell also shows Raddant being pushed from behind, not pulled or "dragged." Dkt. 57-1. So this is a situation in which "the video utterly discredits the non-movant's version of the facts such that there could be no reasonable disagreement about what the video depicts." *Esco*, 107 F.4th at 679–80.

Second, Raddant does not identify *who* "dragged" him. A plaintiff asserting a claim for excessive force under the Fourth Amendment does not necessarily need to identify the officer or officers who applied the force. *Sanchez v. City of Chicago*, 700 F.3d 919, 927 (7th Cir. 2012). But he must at least be able to show that the officers who were present "observed the use of

excessive force, had a reasonable opportunity to stop the use of that force, and failed to intervene." *Id.* Raddant does not even attempt to meet that standard for this claim, so the court will grant summary judgment to all defendants.

**D. Force used in the receiving cell**

Raddant says that officers used excessive force against him in the receiving cell in two ways: (1) pulling his right leg up, causing him to fall and hit has face; (2) moving the mattress pad out from under him so that his face hit the concrete bunk. The court will begin with the second issue because it provides context for the first issue.

Raddant devotes one proposed finding of fact to the issue regarding the mattress pad: "The mattress was kicked out from under [Raddant] as he was brought down." Dkt. 72, ¶ 17. To support that proposed fact, Raddant cites the following passage from his deposition testimony:

> And then I got thrown in the receiver. I've never seen a receiver like that. It had concrete blocks on the floor. If you see the video, he kicked the mattress out as soon as he lifted up over my shoulders, my feet and my arms. It was so choreographed.
>
> Q. Who kicked the mattress out?
>
> A. He had a baseball hat on. I'm not sure what his name was. Clark, maybe.

Dkt. 70, at 71:9–17.

The cited passage shows that Raddant is not relying on his personal observation to conclude that one of the officers kicked the mattress pad; he is relying on his interpretation of the video. In fact, the video shows that Raddant would not have been able to see anyone kicking the mattress pad because he was looking in the other direction and he was in the process of falling. Dkt. 57-1. The video also shows conclusively that none of the officers kicked the

14

mattress pad out from under Raddant. Rather, it shows that *Raddant* inadvertently knocked the mattress pad off the bunk when he slid his left leg back. *Id.* at :12–:13. So the court will dismiss the claim based on kicking the mattress away.

As for lifting Raddant's left leg and causing him to fall, defendants admit that Clarke did that. Defendants say that was reasonable because Raddant was resisting and refusing orders to kneel. They also say that the force was not excessive because officers were holding Raddant on both sides, and there was a mattress pad on the bunk at the time, so it would have been reasonable for Clarke to believe that Raddant's descent would be controlled, and Raddant would not be hurt.

In his proposed findings of fact, Raddant says that he did not "actively resist," and he did not hear officers tell him to kneel. Dkt. 72, ¶¶ 12, 15. But the video evidence contradicts Raddant's testimony that he was not resisting. The video shows Raddant pushing against the officers and locking his leg. So it is clear that he was not subdued. As for Raddant's proposed finding of fact that he did not hear officers telling him to kneel, the cited deposition testimony does not support the fact. Defense counsel asked Raddant multiple times whether he remembered officers asking him to kneel:

> Q. Once you're in the receiving cell, then, were you given any commands or [orders] by the officers?
>
> A. I don't remember anything. I did not resist at all.
>
> Q. Sure. But once you were in the receiving cell, did any of the officers give you any commands or orders?
>
> A. I cannot answer that. I do not know.
>
> . . .
>
> Q. Do you remember being told or asked to kneel once you were in receiving cell?

> A. I think I asked them, where was I, what was going on. I'm not—I can't answer that, to tell you the truth.
>
> Q. And I'm sorry. We may have –
>
> A. It's all on camera.
>
> Q. Sir, we may have had a bad connection, Mr. Raddant. But I had asked you, do you remember being told to kneel once you were in the receiving cell? I'm sorry if I missed your answer, but could you give that again?
>
> A. Not that I'm aware of. I cannot answer that. It's all on camera.

Dkt. 70, at 85:8–86:8.

This testimony does not create a genuine issue of material fact on whether officers told Raddant to kneel. Raddant said three times that he "cannot answer" the question and once said that he did not know the answer. It is true that he also said that he was not "aware of" an order to kneel, but in the context of the other testimony, that cannot be construed as a statement that the officers did not give such an order. Rather, Raddant's testimony is akin to saying that he "does not recall" whether he was ordered to kneel, and that type of equivocal testimony does not raise a genuine fact dispute. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735–36 (7th Cir. 2002).

Raddant also says in his briefs that officers "slamm[ed] him down" on the concrete bunk. Dkt. 65, at 10. But he does not make that allegation in his proposed findings of fact, and he cites no evidence to support it in his brief. The video does not support such an inference, so the court will disregard it.

Based on the above discussion, there is no genuine dispute that Raddant was resisting officers and failing to comply with orders to kneel. Raddant had also been using language that could be viewed as threatening, including, "we're going to have issues." It is also undisputed

that two officers were holding Raddant up, and there was a mattress pad on the bunk. So the question is whether Raddant can show that it was clearly established that lifting up Raddant's leg to destabilize Raddant violated the Fourth Amendment under those circumstances. Raddant has not made that showing.

*Johnson*, 944 F.3d 966, is instructive. The officer in that case had taken down a handcuffed suspect who continued standing up despite orders to stay on the ground. *Id.* at 967. The plaintiff suffered a compound fracture of one of his legs as a result of the incident. *Id.* The parties disputed whether the officer kicked the plaintiff or used a leg sweep to take the plaintiff down, so the court assumed that officer had kicked the plaintiff's shin. *Id.* at 969.

The court did not determine whether the officer may have violated the Fourth Amendment but instead affirmed dismissal on qualified immunity grounds. The court reasoned that "[m]any decisions hold that there is no clearly established rule forbidding a clean takedown to end mild resistance of the sort that [the plaintiff] displayed." *Id.* at 969. The court acknowledged the serious injury that the plaintiff suffered, but that was not dispositive: "Any takedown can go awry—some suspects fall clumsily, while others have fragile bones—but, if the officers use steps reasonably likely to effect a clean takedown, an injury does not lead to liability." *Id.* Even if the officer had kicked the plaintiff, that was not a violation of clearly established law because the plaintiff was not under control at the time, and the kick was an attempt to regain control. *Id.* at 970. "That such an attempt causes injury, perhaps because poorly executed, does not lead to liability." *Id.*

As in *Johnson*, the officers in this case took Raddant down when he was at least "mildly resisting" and refusing to comply with orders. The officers "use[d] steps reasonably likely to

effect a clean takedown" by holding onto Raddant and placing a mattress pad on the bunk, but the takedown nevertheless went "awry." *Id.* at 969.

Raddant did not discuss *Johnson* in his brief. Instead, he relies on *Gupta v. Melloh,* 19 F.4th 990 (7th Cir. 2021). In that case, a police officer tugged on the plaintiff's handcuffs, causing him to fall forward on his head and chest and fracture a vertebra in his neck. *Id.* at 994. The court concluded that summary judgment on the plaintiff's excessive force claim was not appropriate because there were genuine disputes regarding whether the plaintiff resisted and how much force the officer used. *Id.* at 996–1001. But *Gupta* is distinguishable because, in this case, Raddant was resisting, refusing orders, and using threatening language, and defendants made efforts to minimize harm to Raddant. So *Gupta* does not show that defendants violated Raddant's clearly established rights.

Raddant also cites a document published by the Wisconsin Department of Justice titled, "Principles of Subject Control: A Training Guide for Jail and Detention Officers." Dkt. 69-2. Raddant says that the guide does not identify lifting a subject's foot as an approved method of decentralization. That does not necessarily show that defendants violated the policy, but even if they did, the court of appeals has repeatedly held that violations of policies are not relevant to determining the reasonableness of an officer's actions under the Fourth Amendment. *Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 698–99 (7th Cir. 2020); *Thompson v. City of Chicago*, 472 F.3d 444, 453–55 (7th Cir. 2006).

There are certainly things that defendants could have done differently to avoid injury to Raddant. For example, they could have been more patient with him and given him more time to comply. Raddant was handcuffed behind his back, he had not acted violently, and there were five officers in the cell, so there was no urgency. But "[e]ven if the officers misconstrued

18

[Raddant's] actions or misjudged the amount of force needed to subdue him, qualified immunity protects officers from mistakes in judgment of this sort." *Dockery v. Blackburn*, 911 F.3d 458, 468–69 (7th Cir. 2018). So defendants are entitled to summary judgment on the claims based on their conduct in the receiving cell.

**E. Punitive damages**

Punitive damages are available for constitutional violations when the defendant acted with "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendants contend that Raddant cannot meet that standard for any of his claims.

The issue of punitive damages is moot for the claims that the court is dismissing. This leaves the claims that Larson and Libby refused to adjust Raddant's handcuffs and twisted his arm. If the jury accepts Raddant's version of events, it could find that Larson and Libby knew they were causing Raddant pain without a penological purpose. That is enough to support an award of punitive damages, so the court will deny summary judgment on the issue of punitive damages for the two remaining claims.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 48, is GRANTED in part and DENIED in part as follows:

    a. The motion is DENIED on the following claims under the Fourth Amendment: (1) defendants Brett A. Larson and Randi M. Libby refused to adjust plaintiff Christopher R. Raddant's handcuffs; and (2) Larson twisted Raddant's arm, and Libby refused to intervene. The motion is also denied on the issue of punitive damages for these two claims.

    b. The motion is GRANTED in all other respects, and all other claims are dismissed with prejudice.

2. The following parties are DISMISSED: State of Wisconsin Department of Health Services, Douglas County, Alan G. Clarke, Thomas M. Johnson, and David L. Phillips II.

Entered September 13, 2024.

                        BY THE COURT:

                        /s/

                        _____
                        JAMES D. PETERSON
                        District Judge