IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER P. RADDANT, and GROUP HEALTH
COOPERATIVE OF EAU CLAIRE,

Plaintiffs,

OPINION and ORDER

v.

22-cv-555-jdp

BRETT A. LARSON and RANDI M. LIBBY (A.K.A.
RANDI M. BURNAP),

Defendants.

---

This case brought under the Fourth Amendment is proceeding to trial on two claims: (1) defendants Brett A. Larson and Randi M. Libby refused to adjust plaintiff Christopher R. Raddant's handcuffs after he was arrested; and (2) Larson twisted Raddant's arm while Raddant was in handcuffs, and Libby refused to intervene. Raddant is seeking damages for both mental and physical injuries, including injuries to his wrist and shoulder.

Trial is scheduled for November 18. This order addresses the parties' motions in limine, resolving most of them and reserving a ruling on others for further discussion during the final pretrial conference.

ANALYSIS

## A. Raddant's motions in limine

### 1. Criminal history

Raddant seeks to exclude evidence of his other "arrests, convictions, or encounters with the police." Defendants oppose this motion. They do not contend that any of Raddant's prior convictions are admissible under Federal Rule of Evidence 609, so the court does not consider that issue. Instead, defendants contend that Raddant's criminal history is relevant for five other reasons:

1. Raddant may have "witnessed or learned of" a friend's suicide while he was incarcerated, and that could be relevant to explaining Raddant's PTSD diagnosis. Dkt. 136, at 3.

2. Raddant says that he becomes nervous when the police are behind him while he drives, but this may be because Raddant "does not have a driver's license as a result of his criminal convictions." *Id.* at 4.

3. Raddant has given inconsistent answers regarding the number of times he has been convicted for driving under the influence, so defendants should be allowed to "impeach" Raddant on that issue.

4. Raddant's stated fearfulness of law enforcement "must be understood within the context of him having been arrested 26 times, being incarcerated twice, and incarcerated once for several months." *Id.* at 5.

5. Raddant's medical records indicate that he reported a new wrist injury when he was arrested in August 2020, suggesting an alternative cause to the wrist injury he is claiming now.

The court will address each reason in turn.

As for Raddant's friend committing suicide, that may be relevant to Raddant's claim for emotional distress. But defendants do not explain why it matters where Raddant was when his friend committed suicide. So the court will not allow defendants to put in evidence that Raddant was incarcerated when he learned that his friend killed himself.

As for Raddant not having a driver's license, that could provide an explanation for why Raddant becomes nervous when a police officer is behind him while driving, but it is not relevant *why* he does not have a license. All that matters is that he does not have one and could be cited for driving without a license. So the court will not allow defendants to put in evidence of prior convictions to show why Raddant did not have a driver's license.

As for Raddant's inconsistent answers regarding his number of convictions, defendants do not explain what they mean when they say they want to "impeach" Raddant. Presumably, they mean to cross examine Raddant about his inconsistent answers under Federal Rule of Evidence 608(b) as evidence of specific instances of dishonesty. But providing inconsistent answers is not the same as lying. In any event, the probative value of such questions would be substantially outweighed by the risk of prejudice. The court will not allow defendants to explore this topic.

As for Raddant's fearfulness of law enforcement, evidence of past police interactions could be relevant depending on what Raddant's testimony is and what evidence defendants wish to introduce. If Raddant testifies that he is afraid of law enforcement because of defendants' conduct in this case, defendants should be permitted to ask Raddant about other police interactions that could have contributed to that fear. But that does not necessarily mean that Raddant's entire criminal history is fair game. Raddant did not anticipate this issue in his

motion, so the court will reserve a ruling on it to give the parties an opportunity to identify what Raddant's testimony likely will be about this issue, what specific evidence defendants wish to offer in response, and whether any evidence that defendants want to introduce is unfairly prejudicial.

As for medical records suggesting that Raddant's wrist may have been injured after October 2019, defendants are entitled to present evidence showing other potential causes of Raddant's injuries. And the medical record defendants cite make repeated references to Raddant's August 2020 arrest, including his statement that he "started noticing the swelling" when "he was arrested this morning" and "handcuffs were applied." Dkt. 137-2, at 4. The record could not be redacted without removing necessary context.

But it is not clear whether these medical records will be relevant at trial. As will be explained below, the court is excluding Raddant's expert testimony regarding his wrist injury, so Raddant will be limited to testifying about injuries that he is qualified to testify about as a lay person. The parties should be prepared to discuss during the final pretrial conference the scope of what Raddant will be able to testify about and whether the August 2020 medical record remains relevant.

## 2. Prior use of drugs and alcohol

Raddant moves to exclude evidence of his past use of drugs and alcohol, other than any use on October 10, 2019 (the date of the events relevant to this case). Defendants object on the ground that Raddant's past alcohol and drug use is relevant to rebut the opinion of one of Raddant's experts that he is suffering from PTSD because of defendants' conduct. Defendants cite the report of their own psychiatric expert, Lessa Scott-Morrow, who says that a diagnosis of PTSD is inappropriate when symptoms can be explained from the effects of "any

4

psychotropic substance," that she diagnosed Raddant with alcohol use disorder and substance-abuse mood disorder, and that "these conditions and their symptoms served as bases to 'rule out [Plaintiff's] current [PTSD] diagnosis.'" Dkt. 136, at 6 (citing Dkt. 137-1).

As will be discussed in the context of defendants' motion to exclude Jaclyn Barney's testimony, Raddant does not have admissible evidence that defendants' conduct caused PTSD. If Raddant cannot introduce evidence of his PTSD, then there is no need to rebut that evidence.

Defendants also say that they should be permitted to "impeach" Raddant with evidence of past drug and alcohol use. Specifically, they say that he told his psychiatric expert that he does not use illicit drugs and rarely drinks alcohol, and that is inconsistent with Raddant's medical records.

The Federal Rules of Evidence do not a give a party free rein to introduce every inaccurate statement that a party may have made. Defendants cite Rule 607, but that rule simply allows any party to impeach a witness, regardless of who called the witness; it does not identify how or when a party may impeach. Under Rule 608, extrinsic evidence of a false statement is generally not allowed. In any event, defendants have not shown any inconsistency. Raddant's statement to the expert was about his current practices; the medical records that defendants cite are from 2019 or earlier. *Id.* at 7.

The court will grant defendant's motion to exclude evidence of his past alcohol and drug use.

### 3.  Witnesses appearing by video

Raddant moves to preclude "any argument to the jury that any video testimony should be discounted or provided less consideration by virtue of the witness appearing by video." The court will grant this motion as unopposed.

### 4.  When Raddant hired a lawyer

Raddant moves to exclude evidence or argument regarding "when the Plaintiff retained an attorney." The court will grant this motion as unopposed.

### 5.  Past traffic offenses

Raddant moves to exclude evidence of traffic violations. The court will grant this motion as unopposed.

### 6.  Settlement offers

Raddant moves to exclude evidence of settlement offers he has made to defendants. The court will grant this motion as unopposed.

### 7.  Unpaid taxes

Raddant moves to exclude evidence that he has not paid his taxes. The court will grant this motion as unopposed.

### 8.  Collateral sources

Raddant moves to exclude evidence of any payments he received from collateral sources. The court will grant this motion as unopposed.

### 9.  Dismissed claims

Raddant moves to exclude any reference to the claims that he voluntarily dismissed for negligence, battery, and municipal liability. The court will grant this motion as unopposed.

### 10. Reasonableness of medical expenses

Raddant moves to preclude defendants from challenging the reasonableness of the medical treatment he received or the reasonableness of the treatment's cost. The court will grant this motion as unopposed.

This ruling does not preclude defendants from challenging whether Raddant needed the treatment because of defendants' conduct. The parties should be prepared to discuss during the final pretrial conference what evidence, if any, Raddant may present of his medical expenses in light of the court's rulings (discussed below) excluding Raddant's medical experts.

## B. Defendants' motions in limine

### 1. Allow Scott-Morrow to testify by video conference

Leesa Scott-Morrow is defendants' expert on emotional distress damages. Defendants request that she be permitted to testify by video conference because of her "limited availability and limited testimony in this case." Dkt. 115, at 1. Raddant does not oppose the motion, so the court will grant it. It is defense counsel's responsibility to make arrangements with court IT staff to facilitate the testimony and to provide the witness with hard copies of any exhibits that she may need to view during her testimony. The same goes for any exhibits that Raddant's counsel will use during cross examination.

Defendants state that their motion applies to "at least" Scott-Morrow, but they do not identify any other witnesses. If defendants want permission to present any other witnesses by video conference, they should identify those witnesses promptly and explain why an accommodation is needed.

### 2.  Evidence of causation

This motion has two parts. First, defendants contend that Raddant should not be permitted to present any expert testimony unless it is supported "to a reasonable degree of medical certainty." Second, defendants say that Raddant should not be permitted to offer his own lay opinions about what he believes caused specific medical problems.

None of the cases that defendants cite—most of which are applying state rather than federal law—hold that an expert must testify "to a reasonable degree of medical certainty." In any event, this issue is moot because the court is excluding all of Raddant's expert testimony, as will be explained below.

As for Raddant's own lay medical opinions, defendants cite passages from Raddant's deposition in which he says that defendants caused various medical conditions. Dkt. 116, at 3. In response, Raddant does not say that he is qualified to testify that defendants' conduct caused any of the conditions that defendants list in their brief. Instead, Raddant makes a different point, which is that he can testify about symptoms that are rationally based on his own perceptions. Defendants do not argue otherwise. Raddant can testify about the pain and emotional distress he experienced because of the use of force, so long as that testimony is rationally based on his own perceptions. Fed. R. Evid. 701. But Raddant may not diagnose himself with a medical condition or offer an opinion that he suffers from a condition or needed specific treatment because of defendants' conduct. This includes the medical conditions that Raddant discussed in his deposition:  neuroma, tinnitus, balance issues, a severed median nerve, a labrum tear, a shattered clavicle, vomiting, speech issues, memory issues, and the inability to "feel the frontal lobe on [his] face."

### 3.  Evidence or argument "related to claims dismissed on summary judgment"

The title of this motion is broad, but defendants' primary contention is that the court should exclude the 17-second video showing the events in the receiving cell and testimony about those events. The court will grant this aspect of the motion because the court dismissed the claims based on defendants' conduct in the receiving cell, so Raddant cannot recover damages for anything included in the video.

Raddant says that the video is relevant to proving punitive damages, but he does not explain why. The court has determined that the officers did *not* violate Raddant's clearly established rights in the receiving cell, so it is not clear how that conduct could show a need to punish or deter defendants. In any event, what happened in the receiving cell is a separate incident, and Libby was not even involved. The events in the receiving cell are not an appropriate basis for awarding punitive damages.

Defendants also ask the court to prohibit Raddant from "making broad, inflammatory statements." The court will deny that request because the request is too vague. Raddant is free to testify about his own perception of the relevant events. If Raddant becomes argumentative or offers irrelevant opinions, defense counsel may object.

### 4.  Golden rule arguments

Defendants move to exclude arguments that ask jurors to put themselves in Raddant's place. Raddant says that he does not object to excluding arguments based on the Golden Rule or about "trading places" with Raddant. But he says that he should be allowed to make an argument that "no one would go through what the plaintiff did for any amount of money." Raddant does not explain the difference between the arguments. The argument that Raddant

says he should be allowed to make is just another example of counsel asking jurors to put themselves in Raddant's place when determining damages.

The bottom line is that it is irrelevant how a juror might imagine that he or she would be damaged by defendants' conduct. The question for compensatory damages is how *Raddant* was injured, and the question for punitive damages is what amount is necessary to punish and deter *defendants*. No part of the jury's job requires them to consider what would be adequate compensation for the jurors if they had experienced the same conduct. The court will grant this motion.

### 5.  Settlement discussions

The parties agree that settlement negotiations are inadmissible, so the court will grant this motion as unopposed.

### 6.  Sequestering witnesses

The parties agree to sequester non-party witnesses, so the court will grant this motion as unopposed. The parties do not say whether this request applies to experts, so the parties should clarify during the final pretrial conference.

### 7.  Other acts

Defendants broadly request to exclude "other wrongful acts involving the defendant officers or Douglas County." But the only specific conduct defendants discuss is about previous interactions that Raddant had with defendants. Raddant does not oppose excluding that conduct, so the court will grant this motion. Raddant again says that he should be allowed to present evidence about what happened in the receiving cell, and the court will deny that request for the same reasons discussed in Section B.3.

### 8. Insurance

Defendants move to exclude evidence about their insurance. The court will grant that motion as unopposed.

### 9. "What others would have done"

Defendants move to exclude evidence "regarding what others would or would not have done if confronted with the same circumstances confronting the defendant officers." The court will grant this motion as unopposed.

## C. Defendants' motions to exclude expert testimony

### 1. John Watkins

Watkins is an orthopedic surgeon who performed surgery on Raddant's left shoulder in 2021 after diagnosing him with a labral tear. Watkins answered written questions submitted by Raddant's counsel, including the following: "In your professional opinion did the incident of 10/10/19 cause [the tear]?" Dkt. 45, at 4. In response, Watkins wrote, "By Mr. Raddant's report he had no previous history of shoulder injuries or pain. Mechanism of surgery could be consistent with a [labral] tear." *Id.*

Defendants move to strike Watkins's testimony on three grounds: (1) as a nonretained expert, Watkins was limited to considering information within his personal knowledge, and Watkins did not learn enough information from his treatment of Raddant to offer an opinion whether the use of force caused the injury; (2) if Watkins is classified as a retained expert, Raddant's expert disclosure does not satisfy Federal Rule of Civil Procedure 26(a)(2), and the deficiency is neither justified nor harmless; (3) Watkins's opinion on causation is too speculative.

Raddant does not meaningfully respond to defendants' arguments that a nonretained expert may not rely on outside information to support his opinion or that Watkins did not have an adequate basis to support his causation opinion when he first gave it. In fact, Watkins admitted during one of his depositions that he knew only what Raddant told him, which was that Raddant was "thrown to the ground" while handcuffed. Dkt. 95 (Watkins Dep. 32:11–14); Dkt. 129-1, at 1. Watkins did not say that he knew anything about the allegations related to tight handcuffs or twisting Raddant's arm, which are the only claims being tried. But plaintiffs say that Watkins corrected this deficiency when he viewed a video of the relevant events during his deposition. Further, Raddant says that: (1) any failure to comply with Rule 26(a)(2) was harmless because defendants were able to question Watkins about the video during his deposition; and (2) any lack of certainty by Watkins goes to the weight rather than the admissibility of his opinion.

The court disagrees with both of Raddant's contentions. The late disclosure was not harmless because defendants did not have notice of it until Watkins was being deposed, preventing defendants from preparing for that deposition. Parties may not supplement a deficient expert disclosure through deposition testimony. *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 641–42 (7th Cir. 2008).

In any event, Watkins's deposition testimony is not adequately supported as required by Federal Rule of Evidence 702. The problem is not simply that Watkins failed to provide absolute certainty. Rather, he failed to offer any opinion on the likelihood that the conduct he witnessed in the video caused Raddant's labral tear.

Defense counsel repeatedly asked Watkins whether he believed that defendants'
conduct caused the tear, and Watkins did not directly answer the question. Here's one example
of his answer:

> [C]orrelation and causation are difficult. And that's a fairly
> atypical mechanism of injury. There is some internal rotation and
> external rotation can certainly predispose to those. It's hard to
> visualize, but it seems like there was some elbow flexion, which
> should relax the biceps a little bit. Typically it's an axial load
> contraction on the arm and then a contraction on the biceps. So
> atypical manner, but certainly his symptoms correlate to this
> incident as the source of his discomfort. And I do think the biceps
> was the source of his pain.

Dkt. 98, at 60:25–61:13.[1] Watkins repeated a similar answer several times, stating that the

mechanism of injury would be atypical, but defendants' conduct "could have" caused a labral

tear. *Id.* at 61:19–25, 63:14–21, 65:15–17, 67:3–10. But when asked to explain the basis for

that view, Watkins's only response was that defendants' conduct "correlates to the onset of

[Raddant's] symptoms." *Id.* at 64:5–6; *see also id.* at 54:23–25, 56:10–16, 57:22–23, 61:19–25,

62:2–3, 62:14–18, 63:14–21, 65:15–17, 66:11–15, 71:21–72:15, 80:8–16, 82:5–6. In other

words, Watkins's only basis for inferring causation was that Raddant reported that his

symptoms began after October 10. Watkins did not say that he considered Raddant's medical

history before or after October 10, or the other uses of force that occurred on October 10, such

as the incident in the receiving room leading to Raddant being dropped onto a cement slab.

Under these circumstances, Watkins's opinion is too speculative and would not be helpful to

the jury in assessing causation. *See Myers v. Illinois Central R. Co.*, 629 F.3d 639, 644–45 (7th

---

[1] Defendants filed an uncertified copy of Watkins's October 23 deposition, presumably because
the deposition was taken only two days before it was filed. Raddant does not object to the
deposition on the ground that it is a rough draft, but defendants are directed to promptly file
a certified copy of the deposition or show cause why they are unable to do so.

Cir. 2010) (affirming exclusion of testimony of expert who did not rule out other causes or apply any method other than "common sense"); *DeLong Co., Inc. v. Syngenta AG*, No. 23-cv-321-jdp, 2024 WL 1343592, at *14 (W.D. Wis. Mar. 29, 2024) ("A failure to consider other factors may require exclusion of expert testimony when the omitted cause could have been the sole cause of the plaintiff's harm.") (citing *Liebhart v. SPX Corporation*, 917 F.3d 952, 962–63 (7th Cir. 2019)).

Defendants' motion focuses on Watkins's causation opinion. But Watkins's other opinions about Raddant's shoulder injury are not relevant unless they are tied to defendants' conduct. Raddant points to no evidence of causation other than Watkins's opinion, so the court will exclude all of Watkins's testimony.

### 2. Samuel Hoxie

Hoxie is an orthopedic surgeon who treated Raddant's wrist and diagnosed him with a left wrist median nerve injury called a neuroma. Hoxie answered written questions submitted by Raddant's lawyer, including the following: "In your professional opinion, did the incident of 10/10/19 cause Mr. Raddant's [wrist injury]?" Hoxie answered, "Yes." Defendants object to any testimony from Hoxie about causation on two grounds: (1) he admitted in his deposition that he could not determine the cause of Raddant's wrist injury; and (2) Raddant's expert disclosures did not include a summary of the facts that he relied on. The court agrees with the first contention, so it is not necessary to consider the second.

To support their first contention, defendants cite several passages from Hoxie's deposition in which he said that there were multiple potential causes of Raddant's nerve injury, and Hoxie could not determine which one was the cause. For example, he said that "there really isn't a way to differentiate which injury—or what the—inciting event is" and the "cause is not

14

knowable." Dkt. 97 (60:21–61:1 and 100:2–15). In response, Raddant cites a different passage from the deposition in which Hoxie states the following:

> [M]y understanding is that Chris was—Chris had a higher level of pain after October 10th. I think specifically our pattern of care for medication and therapy to decrease his pain, I do think that level of treatment was, you know, responsible or caused by October 10th, 2019.

*Id.* at 102:4-19.

> Raddant omits the testimony that immediately follows the quoted passage:

> Was the neuroma and the necessary neuroma surgeries caused by events of that day with Douglas County law enforcement? That's—that's not knowable.

> So I—my answer to the question—I want to make sure I'm saying this right—question no. 5 [whether the treatment Hoxie provided "was caused by the incident on 10/10/10"], is that did we do our best to care for pain that Chris had after those events? Yes, I think we did. But did neuroma come around because of those events? That's unknowable.

*Id.* at 102:20–103:5. So Hoxie confirmed that he could not give an opinion about what caused Raddant's neuroma; Hoxie's opinion was about what could have caused Raddant's pain. And even that opinion was qualified. Defense counsel asked Hoxie a follow-up question whether Hoxie's opinion was that Raddant's "subjective reports of increased pain in his left wrist . . . is likely due to something that occurred during the 10-10-2019 incident." *Id.* at 103:6–12. Hoxie answered, "With an underline under subjective. Mr. Raddant felt worse afterwords." *Id.* at 103:14–15. When defense counsel then asked Hoxie what he knew about the events on October 10, Hoxie said, "Chris describes that he was in handcuffs and that he was treated roughly. That's all I really know." *Id.* at 103:21–24.

The court will grant the motion to exclude Hoxie's testimony. Hoxie admitted that he could not give an opinion on what caused Raddant's neuroma and that his opinion that

15

Raddant's pain was caused by the events of October 10 was based solely on Raddant's statement that his pain increased after October 10. That is a problem for two reasons. First, it is not an expert opinion and would not be helpful to the jury because it adds nothing to what Raddant could say himself. Second, it does not take account of the fact that many of the events from October 10 are no longer part of this lawsuit, including Raddant's claims about being dropped onto a cement slab. Raddant points to no testimony from Hoxie considering whether tight handcuffs or twisting Raddant's arm could have caused a long-lasting injury.

Expert testimony is not admissible unless it is based on sufficient facts or data, is the product of reliable principles and methods, and would be helpful to the jury. Fed. R. Evid. 702. Hoxie's proposed testimony does not meet those requirements, so the court will grant the motion to exclude the testimony.

### 3. Richard Grossart

Grossart is a physician who practices occupational medicine. He determined that Raddant suffered a permanent partial disability because of his wrist injuries. Dkt. 45, at 33. Defendants move to exclude Grossart's testimony on two grounds: (1) Grossart admitted during his deposition that he did not have an opinion on causation; and (2) Raddant's expert disclosures do not identify the basis for any causation opinion,

Raddant does not dispute that Grossart cannot testify about causation. But he says that Grossart should be permitted to testify about "the extent" of Raddant's injuries because other experts can testify on causation. The court has excluded the causation testimony of Raddant's other experts, so Grossart's testimony is not relevant. The court will grant the motion to exclude Grossart's testimony.

16

### 4.  Jaclyn Barney

Barney is a nurse practitioner who specializes in psychiatry. She diagnosed Raddant with post-traumatic stress disorder. Barney answered written questions submitted by Raddant's lawyer, including the following: "In your professional opinion, did the incident of 10/10/19 cause Mr. Raddant's [PTSD]?" Barney answered, "Yes."

Defendants move to exclude this opinion on three grounds: (1) Barney's deposition testimony reveals that she does not have an adequate foundation for her opinion; (2) Barney did not consider other potential causes of Raddant's PTSD; and (3) Raddant's expert disclosures did not identify facts the opinion is based on.

The court agrees with defendants that Barney has not provided an adequate foundation for her opinion. When asked during her deposition about her understanding of what happened when Raddant was arrested in October 2019, she admitted that her understanding was limited:

> I understand that he was, you know, drinking and something happened, and he had an altercation with six police officers at the Sheriff's Office and that he—you know, that these things resulted in whatever—however, they, you know, managed his behaviors it sounds like they result in a lot of orthopedic injuries and a traumatic brain injury.

Dkt. 94, at 42:23–43:5. When describing the alleged assault, she said it was "[s]omething that involved, you know, putting him in a hold that affected his shoulder and wrist or maybe both wrists—I don't recall—and something that resulted in the head injury." *Id.* at 48:10–14. When asked whether "the way that the handcuffs had been applied to Mr. Raddant on October 10th of 2019" was "something that factored into [her] diagnosis of him having PTSD," she said, "No." *Id.* at 44:18–22.  She also said that Raddant's symptoms "go along with his brain injury." *Id.* at 48:1–6.

17

Raddant alleged that he hurt his head when officers dropped him on a cement slab in the receiving room, but those events are no longer part of the case. They were part of the claims that the court dismissed. Because the head injuries are no longer relevant, any expert opinion that rests on those injuries is not admissible. Barney did not offer an opinion that the alleged arm twisting or tight handcuffs could have caused Raddant's PTSD, and she appeared to disavow an opinion that the tight handcuffs contributed to her opinion. Raddant did not ask Barney to update Raddant's opinion after the summary judgment opinion was issued two months ago, and it would be unfairly prejudicial to allow her to do so now.

Without any evidence of causation, Barney's opinion that Raddant is suffering from PTSD simply is not relevant. The court will grant the motion to exclude Barney's testimony.

### 5. Bruce Schuyler

Schuyler is a vocational expert. Defendants move to exclude his testimony because it relies on the causation opinions of the other experts, and the court should exclude those opinions. Raddant does not dispute Schuyler's opinion rests on the opinions of the other experts. The court is excluding those opinions, so the court will exclude Schuyler's testimony as well.

ORDER

IT IS ORDERED that:

1. Plaintiff Christopher Raddant's motion to exclude evidence of his criminal history, Dkt. 104, is GRANTED except that the court reserves a ruling on whether defendants Brett Larson and Randi Libby may introduce evidence to rebut testimony that Raddant is fearful of police and whether defendants may introduce medical records from August 2020 showing that Raddant was incarcerated.

2. Raddant's motion to exclude evidence of his past drug and alcohol use, Dkt. 104, is GRANTED.

18

3. Raddant's motion to preclude "any argument to the jury that any video testimony should be discounted or provided less consideration by virtue of the witness appearing by video," Dkt. 104, is GRANTED as unopposed.

4. Raddant's motion to exclude evidence or argument regarding "when the Plaintiff retained an attorney," Dkt. 104, is GRANTED as unopposed.

5. Raddant's motion to exclude evidence of traffic violations, Dkt. 104, is GRANTED as unopposed.

6. Raddant's motion to exclude evidence of settlement offers he has made to defendants. Dkt. 104, is GRANTED as unopposed.

7. Raddant's motion to exclude evidence that he has not paid his taxes, Dkt. 104, is GRANTED as unopposed.

8. Raddant's motion to exclude evidence of any payments he received from collateral sources, Dkt. 104, is GRANTED as unopposed.

9. Raddant's motion to exclude any reference to the claims that he voluntarily dismissed for negligence, battery, and municipal liability, Dkt. 104, is GRANTED as unopposed.

10. Raddant's motion to preclude defendants from challenging the reasonableness of the medical treatment he received or the reasonableness of its cost, Dkt. 104, is GRANTED as unopposed.

11. Defendants' motion to allow Leesa Scott-Morrow to appear by video conference, Dkt. 115, is GRANTED as unopposed.

12. Defendants' motion to require Raddant's experts to testify to a reasonable degree of medical certainty, Dkt. 116, is DENIED as moot. Defendants' motion to preclude Raddant from offering opinions about what he believes caused specific medical problems, Dkt. 116, is GRANTED.

13. Defendants' motion to exclude the video of events in the receiving cell, Dkt. 117, is GRANTED. Defendants' motion to preclude Raddant from "making broad, inflammatory statements" is DENIED as too vague.

14. Defendants' motion to preclude Raddant from making "golden rule" arguments, Dkt. 118, is GRANTED.

15. Defendants' motion to exclude evidence of settlement discussions, Dkt. 119, is GRANTED as unopposed.

16. Defendants' motion to sequester nonparty witness, Dkt. 120, is GRANTED as unopposed.

17. Defendants' motion to exclude evidence about any interactions between Raddant and defendants other than on October 10, 2019, Dkt. 121, is GRANTED.

18. Defendants' motion to exclude evidence about their insurance, Dkt. 122, is GRANTED as unopposed.

19. Defendants' motion to exclude evidence "regarding what others would or would not have done if confronted with the same circumstances confronting the defendant officers," Dkt. 123, is GRANTED as unopposed.

20. Defendants' motion to exclude the testimony of John Watkins, Dkt. 124, is GRANTED.

21. Defendants' motion to exclude the testimony of Samuel Hoxie, Dkt. 128, is GRANTED.

22. Defendants' motion to exclude the testimony of Richard Gossart, Dkt. 125, is GRANTED.

23. Defendants' motion to exclude the testimony of Jaclyn Barney, Dkt. 126, is GRANTED.

24. Defendants' motion to exclude the testimony of Bruce Shuyler, Dkt. 127, is GRANTED.

Entered November 7, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

20