IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER P. RADDANT, and GROUP HEALTH
COOPERATIVE OF EAU CLAIRE,

          Plaintiffs,

          v.

BRETT A. LARSON and RANDI M. LIBBY (A.K.A.
RANDI M. BURNAP),

          Defendants.

OPINION and ORDER

22-cv-555-jdp

---

Defendants seek sanctions for plaintiff Christopher Raddant's failure to complete independent medical examinations on four occasions. Dkt. 151. Specifically, defendants contend that Raddant and his counsel should be required to pay $8,092.50, which are the fees charged by the doctors for the cancelled appointments. Defendants also seek reimbursement for expenses incurred in bringing their motion. For the reasons below, the court will grant the motion in part and deny it in part.

BACKGROUND

On April 12, 2024, defendants sent Raddant's counsel notices for independent medical examinations on May 2 with Leesa Scott-Morrow, on May 23 with Thomas Misukanis, and on July 11 with Sarah Elert. Dkt. 153-1, at 2.[1] Included with the notices was a medical history questionnaire, and the cover letter to the notices instructed Raddant to complete the

---

[1] Defense counsel's cover letter also refers to a notice for an independent vocational evaluation, but the parties do not discuss that evaluation in their briefs.

questionnaire before the May 23 appointment with Misukanis. Each notice included the following sentence: "If the plaintiff fails to show for this examination or cancellation occurs, cancellation or no show fees will be assessed for the independent medical examination and may be assessed against plaintiff or his counsel." *Id.*

On May 2, Raddant appeared for his examination with Scott-Morrow, but he left before the examination finished because he became ill and started vomiting. Over the next few days, defense counsel and Raddant's counsel exchanged emails about rescheduling the appointment. On May 2, defense counsel stated that Scott-Morrow was available on May 9, and "[s]he would waive the late cancellation fee if that date and time work." Dkt. 153-2, at 1. (Defense counsel later offered May 10 as well.) The next day, defense counsel followed up, asking Raddant's counsel if Raddant would take the alternative date. Raddant's counsel stated that she had tried emailing and calling Raddant, but he had not responded. On May 6, Raddant's counsel told defense counsel that Raddant "is not able to make it this week." Dkt. 153-2, at 3. No details were provided. Defense counsel later forwarded a $3,270 invoice to Raddant's counsel for the missed appointment.

On May 21, Raddant's counsel informed defense counsel that Raddant would not be able to attend his May 23 examination with Misukanis because "some last-minute things . . . have come up." *Id.* at 4. The email did not specify what the conflict was. Defense counsel informed Raddant's counsel that there would be a cancellation fee if Raddant did not appear for his examination on May 23. Defense counsel later forwarded a $1,430 invoice to Raddant's counsel for the missed appointment.

On June 10, Raddant's counsel informed defense counsel that Raddant would not be able to attend his June 11 appointment with Elert. Raddant's counsel wrote, "Yesterday, a very

close friend of his was in a motorcycle accident and is in the ICU." *Id.* at 7. In response, defense counsel wrote that there would be a cancellation fee. Defense counsel later forwarded a $1,430 invoice to Raddant's counsel.

On August 1, Raddant appeared for an examination by Misukanis. But Raddant left before the examination started because he had not completed the questionnaire, and Misukanis would not conduct the examination without answers to the questionnaire. Defense counsel informed Raddant's counsel that there would be a cancellation fee. Defense counsel later forwarded to Raddant's counsel a $1,962.50 invoice ($1,430 for the cancellation fee, $532.50 for 1.5 hours that Misukanis spent preparing for the exam).

The parties rescheduled an examination with Misukanis for September 12. But defendants cancelled the examination because Raddant's counsel was instructing Raddant not to complete the questionnaire. Defendants are not seeking sanctions based on that cancelled appointment.

## ANALYSIS

Defendants seek sanctions under three sources of law: (1) Federal Rule of Civil Procedure 37; (2) 28 U.S.C. § 1927; and (3) the court's inherent authority.[2] The court will consider whether defendants have satisfied the standard for imposing sanctions under each source.

---

[2] Defendants did not file their sanctions motion until two to six months after Raddant missed the appointments at issue, but Raddant does not object to the motion as untimely, so the court does not consider that issue.

A. **Rule 37**

Defendants have not identified a provision under Rule 37 that authorizes sanctions under the circumstances of this case. The conduct at issue is similar to that addressed in Rule 37(d), which allows the court to order sanctions, including reasonable expenses, if a party fails to sit for a deposition, serve an answer to an interrogatory, or respond to a request for inspection. But Rule 37(d) does not identify a failure to attend a medical examination as a basis for awarding sanctions, and defendants offer no basis for interpreting the rule beyond its text.

Rule 37(b) allows the court to impose sanctions when a party fails to comply with a court order. Courts have directed parties to pay reasonable expenses under that provision when the party fails to appear for an independent medical examination ordered under Federal Rule of Civil Procedure 35. *See, e.g., Jump v. Montgomery Cnty.*, No.13-cv-3084, 2015 WL 7348207, at *2 (C.D. Ill. Nov. 20, 2015). But the court did not order any examinations in this case; the parties agreed to them informally. So Rule 37(b) does not apply either. *See Susana v. NY Waterway*, 662 F. Supp. 3d 477, 493 (S.D.N.Y. 2023) (denying motion for sanctions under Rule 37 for party's failure to appear for medical examination because party did not violate a court order).

Rather than Rule 37(d) or Rule 37(b), defendants rely on Rule 37(a), but that provision applies only to motions "for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Plaintiffs have called their motion a "motion to compel," but they are not seeking discovery or disclosure now. They only want to "compel" payment. So Rule 37(a) does not apply.

4

In their reply brief, defendants say that a motion to compel discovery is not a prerequisite to an award of sanctions under Rule 37(a). But defendants cite no authority for that view, and it is inconsistent with the plain language of the rule. Rule 37(a)(5)(A) allows the court to award sanctions only if "the motion [to compel discovery] is granted—or if the disclosure or requested discovery is provided after the motion was filed." So the provision applies only if there is an ongoing discovery dispute when the motion to compel is filed. Defendants were not seeking to compel an examination when they filed their sanctions motion.

Defendants identify no other provision in Rule 37 or any other rule in the Federal Rules of Civil Procedure that would authorize sanctions under the circumstances in this case. This may suggest that there is a gap in Rule 37 because the rule authorizes sanctions in situations that are not materially different from this one. But even if there are good arguments for extending Rule 37, the court cannot rewrite the rule. So the court cannot grant relief under Rule 37.

**B.  28 U.S.C. § 1927**

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 applies to lawyers only. *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010).

The court of appeals has defined vexatious to mean "subjective or objective bad faith." *4SEMO.com Incorporated v. Southern Illinois Storm Shelters, Inc.*, 939 F.3d 905, 913 (7th Cir. 2019). And the court defines objective bad faith to mean "reckless indifference to the law: pursuing a path that a reasonably careful attorney would have known, after appropriate inquiry,

to be unsound." *Id.* (internal quotation marks and alterations omitted). "[O]rdinary negligence" is not enough, but "extremely negligent conduct" satisfies the standard. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1185 (7th Cir. 1992).

Defendants do not identify any basis for concluding that Raddant missed his appointments with Scott-Morrow or Elert because of his counsel. But defendants blame Raddant's counsel for the cancelled appointments with Misukanis. Specifically, defendants say that those cancelled appointments were counsel's fault because they failed to raise a timely objection to the questionnaire.[3]

Raddant's counsel's failure to object was not the immediate cause of Raddant's failure to complete the May 23 or August 1 appointments with Misukanis. Raddant cancelled the May 23 appointment for personal reasons. The August 1 appointment *was* cancelled for Raddant's failure to fill out the questionnaire, but neither side cites any evidence that Raddant was acting at his counsel's direction. That direction came later, while the parties were trying to reschedule the examination with Misukanis for September.

But the court concludes that it is fair to hold Raddant's counsel responsible for both missed appointments because counsel's later actions show that they did object to the

---

[3] In their reply brief, defendants raise new arguments that Raddant's counsel acted in bad faith by failing to tell Raddant before September 9 that defense counsel was seeking payment for the missed appointments, by refusing to pay the cancellation fees after implying they would, and by failing to respond to defense counsel's requests for clarification. Dkt. 172, at 15–16. Defendants also say that their support staff "had to devote time and resources" to addressing the nonpayment issue. *Id.* Defendants forfeited these issues by failing to raise them in their opening brief. Regardless, defendants do not identify any expenses they are seeking other than the cancellation fees and the expenses incurred in bringing their motion, so the court will not consider the new arguments.

questionnaire, and they would instruct Raddant not to complete it, so from the beginning it was pointless to schedule an examination with Misukanis.

Raddant's counsel could have objected much earlier: defense counsel provided the questionnaire to Raddant's counsel in April, and the notice included directions to complete the questionnaire before the May 23 appointment. Raddant's reaction to the questionnaire on August 1 suggests that his counsel simply failed to provide Raddant with the questionnaire. Raddant's counsel cite no evidence to the contrary, and they provide no reason for failing to either instruct Raddant to complete the questionnaire or raise an objection to the questionnaire in April 2024.

Raddant's counsel object to sanctions on the ground that defendants have not cited case law showing that defendants were entitled to require Raddant to fill out the questionnaire. But that is beside the point. Even if defendants could not force Raddant to fill out a questionnaire as part of the examination, that does not excuse Raddant's counsel for saying nothing for four months. If Raddant's counsel had objected when defense counsel sent the questionnaire on April 12, the parties could have negotiated the terms of the examination, sought clarification from the court regarding the permissible scope of the examination, or found a new doctor who would conduct the examination without a questionnaire. But instead, Raddant's counsel did nothing, resulting in months of wasted time and two cancellation fees as the parties attempted to schedule and reschedule an examination with Misukanis that was never going to happen.

Raddant's counsel's conduct demonstrates a level of culpability that is more than ordinary negligence. Rather, Raddant's counsel simply disregarded the instructions that defense counsel provided, and Raddant's counsel provides no justification for their conduct,

7

not even oversight. Under these circumstances, the court finds that Raddant's counsel demonstrated reckless indifference. They "pursu[ed] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *4SEMO.com*, 939 F.3d at 913.

The court will direct Raddant's counsel to pay $3,392 in cancellation fees for the two missed Misukanis appointments, $1,430 for the missed May 23 appointment and $1,962.50 for the missed August 1 appointment. Both of those cancellation fees could have been avoided if counsel had raised a timely objection to the questionnaire in April.

Raddant's counsel make a general objection to the amount of the fees. But they offer no basis for challenging the reasonableness of the fee, and the fee is not obviously unreasonably, so the court declines to reduce it.

## C. Inherent authority

The standard for imposing sanctions under the court's inherent authority is similar to the standard under § 1927: the moving party must show bad faith "designed to obstruct the judicial process." *Vega v. Chicago Board of Education*, 109 F.4th 948, 956 (7th Cir. 2024); *Judson Atkinson Candies, Inc. v. Latini Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008). Defendants seek sanctions against Raddant personally for each of the missed appointments.

As for the May 2 appointment with Scott-Morrow, defendants do not contend that Raddant acted in bad faith by leaving the appointment when he became ill. Rather, they focus on his failure to accept alternative dates defendants offered, and the only reason he provided was that he was "not able to make it." Raddant says that sanctions are not appropriate because defendants did not tell him that he would be charged a cancellation fee if he did not accept the alternative dates. But that is not persuasive for two reasons. First, the notices that defendants provided on April 12 stated, "If the plaintiff fails to show for this examination or cancellation

8

occurs, cancellation or no show fees will be assessed for the independent medical examination and may be assessed against plaintiff or his counsel." Second, the email defense counsel sent Raddant's counsel after he left the May 1 appointment stated that Scott-Morrow would waive the cancellation fee *if* he agreed to the alternative date she offered. Dkt. 153-2, at 1. So Raddant had fair notice that he would be charged a cancellation fee.

Even now, Raddant does not offer any reason why he was unable to accept the alternative dates that defendants offered. This supports a finding that Raddant was disregarding his obligations in the litigation and, by extension, the judicial process. This is enough to infer bad faith. So the court will order Raddant to pay $3,270 for the missed appointment with Scott-Morrow.

As for the May 23 appointment with Misukanis, Raddant has similarly failed to identify any reason why he could not attend the appointment, either then or now. He says only that there was no bad faith because he provided two-days notice of the cancellation. But that is not persuasive when defendants put Raddant on notice that cancellations could result in fees, and he offers no evidence that Misukanis was able to offer the time slot to someone else. Again, cancelling an appointment without cause supports a finding of bad faith. So the court will direct Raddant to pay the $1,430 invoice for the missed May 23 Misukanis appointment.

As for the June 10 appointment with Elert, Raddant says that he missed the appointment because a close friend was in the intensive care unit. Defendants do not ask the court to infer from Raddant's pattern of missed appointments that his excuse was fabricated, and they do not otherwise challenge the veracity of the excuse, so the court does not consider that issue. Defendants also do not challenge the reasonableness of Raddant's excuse, stating that they "appreciate the gravity of the situation." Dkt. 172, at 7. Their only argument is that

they "had even less control over the circumstances and cancellation than Plaintiff," so they are "entirely blameless." *Id.* But the question before the court is not which party is more to blame for the cancellation. The question is whether Raddant acted in bad faith when he cancelled the appointment. Defendants have not provided a basis for the court to infer bad faith, so the court will not impose sanctions for the missed June 10 appointment.

As for the August 1 appointment with Misukanis, the parties agree that Raddant showed up for the examination, but the examination did not occur because he failed to complete the questionnaire. But the parties dispute some of the details. Defendants say that Raddant terminated the appointment, becoming angry and walking out when Misukanis gave him the questionnaire. Dkt. 153-2, at 9. Raddant's counsel say that Raddant "attempted to fill out" the questionnaire, but he "did not know how to answer the questions," and it was Misukanis who refused to continue with the examination. Dkt. 169, ¶ 2.

If Raddant refused to cooperate with the examination, that would support a finding of bad faith. But if Raddant simply did not know how to answer the questions, no finding of bad faith would be warranted. The problem is that neither side cites testimony from Misukanis, Raddant, or anyone with personal knowledge of the interaction about what happened on August 1. Rather, counsel rely solely on their own hearsay statements in an email and a declaration, so there is no admissible evidence in the record to support either side's version of events. But it is defendants' burden to show bad faith. *Textor v. Board of Regents of Northern Illinois Univ.*, 711 F.2d 1387, 1395 (7th Cir. 1983). When there is an absence of evidence on a critical issue, the party with the burden loses. *Metzl v. Leininger*, 57 F.3d 618, 622 (7th Cir. 1995). So the court declines to impose sanctions on Raddant personally for failing to complete the August examination.

**D. Conclusion**

To sum up, the court will order Raddant to pay the $3,270 invoice for the missed May 2 appointment with Scott-Morrow; Raddant's counsel will pay the $1,962 invoice for the missed August 1 Misukanis appointment; and Raddant and his counsel are jointly and severally responsible for paying the $1,430 invoice for the missed May 23 Misukanis appointment. Defense counsel say in their letter to Raddant's counsel that defense counsel did not pay the invoices themselves, Dkt. 153-4, at 2, and defense counsel do not say in their motion that they have paid the invoices since. So the court will direct Raddant and his counsel to pay the invoices directly to Woodland Medical Management, Inc., which is the entity that issued the invoices and through which defendants retained their experts. Dkt. 153, ¶ 4; Dkt. 153-3.

The remaining issue is defendants' request for the fees incurred in bringing their sanctions motion. The court will grant that request in part. Defendants were successful on a significant portion of their motion, but the court rejected several of their arguments. Defendants also raised new issues in their reply brief, resulting in a reply brief that was almost three times longer than the opposition brief. So the court will approve one half of defendants' attorney fees incurred in bringing in the motion.

Before defendants submit a fee petition to the court, they should confer with Raddant's counsel on an appropriate amount, and any fee petition must be accompanied by a description of the efforts the parties made to resolve the amount of fees without a court order. If the petition does not demonstrate that defendants made reasonable efforts to resolve the dispute, the court will deny the petition. The petition must also comply with the court's procedures on fee petitions, which are included in the attachments to the preliminary pretrial conference order, Dkt. 36.

ORDER

IT IS ORDERED that:

1. Defendants' motion for sanctions, Dkt. 151, is GRANTED in part and DENIED in part as follows:

   a. The law firm of Hupy and Abraham, S.C. is directed to pay the $1,962.50 invoice from Woodland Medical Management, Inc. for the August 1 appointment with Thomas Misukanis.

   b. Christopher Raddant is directed to pay the $3,270 invoice from Woodland Medical Management for the May 2 appointment with Leesa Scott-Morrow.

   c. Raddant and Hupy and Abraham are directed to pay the $1,430 invoice from Woodland Medical Management for the May 23 appointment with Misukanis.

   d. Neither Raddant nor his counsel are required to pay the $1,430 invoice for the June 10 appointment with Sarah Elert.

2. Defendants may have until May 7, 2025, to submit a fee petition in accordance with this opinion.

Entered April 23, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge